12836

PEDEN v. FURMAN UNIVERSITY *ET AL.*

(151 S. E., 907)

2

September, 1927.

4

8

*Mr. W. G. Sirrine,* for appellant,

*Messrs. Haynsworth & Haynsworth,* for respondents,

*Messrs. Blythe & Bonham,* also for respondents.

February 19, 1930.

The opinion of the Court was delivered by MR. ACTING JUSTICE C. C. WYCHE.

This is an action by J. R. Peden against Furman University and Greenville Baseball Association to restrain and enjoin them from using Graham field for baseball or other athletic or sport purposes, and against Furman University for five thousand dollars damages alleged to have been caused as a result of Furman University leasing grounds known as Graham field, adjoining plaintiff's property, for the purpose of playing baseball games thereon, and it is alleged that, because Graham field is not large enough, and is known by the defendants not to be large enough, for a baseball park, balls are frequently batted by the ball players over the fence onto the premises of the plaintiff, where boys scramble to recover them, which, if presented at the gate, entitle the holder to free admission to the games; that other trespasses are committed, his fences torn down, his yards and gardens trampled by employees of Greenville Baseball Association, students of the university, and persons there to see the games, and made conditions otherwise so unbearable that plaintiff could not reside in his own residence with any degree of peace and comfort, and he was by reason thereof compelled to move, and on account of which he could not rent the houses; that, when plaintiff was absent during the games, persons trespassed upon his land, climbed upon his houses, tore the shingles from the roof, broke out the window panes, and did other damage to his property; that the baseball games drew to the neighborhood of his property large crowds of people, numerous motorcars that blocked the traffic and created disagreeable noises, and caused smoke and fumes of gas, and generally disturbed the quiet of his premises; that the use of the field in the manner above set forth by permission of the university and its lease of the same for said purpose is unlawful, and constitutes a nuisance, on account of which plaintiff suffered irreparable injury and damage, and alleges he is entitled to a perpetual injunction restraining the use of said park for athletic purposes.

Furman University alleges that it purchased Graham field for use by its students as an athletic field, but, being without sufficient funds to properly develop it for an athletic field, leased it to the Municipal Athletic Corporation for a period of years ending September 15, 1934, upon the agreement that the said association expend not less than twenty-two thousand, five hundred dollars in grading and improving the premises and erecting thereon a grandstand, clubhouses, and fences, and keep the same in good condition during said period, and providing that said association might lease the premises to the Greenville Baseball Club for league baseball during the baseball season and spring practice, the university reserving unto itself the right to use the premises for its students when the same were not being used for league baseball purposes, and providing that at the end of said term the premises were to be returned to the university with all the improvements thereon constructed by the parties aforesaid; in pursuance of which agreement a lease of said premises to the Greenville Baseball Association was had; that the university did not lay out the baseball park or have any control over its operation, and by reason thereof the university is not liable; that the game of baseball is not a nuisance *per se*, and that the manner in which the games were conducted were not in the nature of a nuisance, but were conducted under police protection and discipline, and free from rowdyism and other disorders, and denies that the park is conducted by either of the defendants in such a way as to constitute a nuisance, and that Furman University is an eleemosynary institution, and for this reason cannot be held liable in this action.

At the conclusion of the testimony, the presiding Judge directed a verdict in favor of the defendants, and thereafter refused a motion for a new trial. From the judgment duly entered thereon, plaintiff has appealed to this Court upon seven exceptions.

The presiding Judge directed a verdict in favor of Furman University on the ground that it is an eleemosynary institution, and as such, cannot be held liable in this action, and stated as his reason therefor that "it fell within the doctrine laid down in the Vermillion case, 104 S. C., 197, 88 S. E., 649, 650." In our opinion, the Vermillion case is not analogous. In the Vermillion case the defendant gave a musical entertainment in its auditorium. While the entertainment was in progress, the balcony fell on plaintiff's intestate, causing his death. The cause of action was based upon the negligent construction of the balcony. In rendering the opinion of the Court in this case, Judge Hydrick said:

"The exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. * * *

"This rule does not put such charities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of respondeat superior, which is itself based on reasons of public policy." (Italics added.)

Appellant's action against Furman University is not based upon negligence or upon the principle of respondeat superior. He asks no damages against the university on account of the negligence of any of its agents or servants or of the university itself. He alleges that he has been damaged as a result of Furman University leasing ground known as Gra-

ham field for the purpose of playing baseball games therein, when the university knew that Graham field was not large enough for a baseball park, and by reason thereof balls are frequently batted by the ball players over the fence onto his premises, and other trespasses and damages done to his property, as alleged in his complaint, and as testified to by his witnesses, so that conditions were made so unbearable that he could not reside in his own residence with any degree of peace and comfort, and was thereby compelled to move, and on account of which he has been unable to rent his property, and that the said use of the field, as alleged and testified to, was by permission of the university and in accordance with its lease, and constitutes a nuisance, and amounts to a taking of his property without just compensation first being had, contrary to the Constitution of South Carolina.

The decision in the *Vermillion case* is based upon the principle of public policy in "that, in organized society, the rights of the individual must, *in some instances,* be subordinated to the public good," but declares that "this rule does not put such charities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is *merely* an exception to the rule of *respondeat superior,* which is itself based on reasons of public policy." (Italics added.)

So, in the case of *Lindler v. Hospital,* 98 S. C., 25, 81 S. E., 512, the Court, upon grounds of public policy, refused to extend the doctrine of *respondeat superior* to a case brought against a charitable institution for the negligence of an employee.

There is no doctrine of public policy that would permit the university to commit the acts of trespass, as alleged and testified to in this case, or authorize it to so damage and use plaintiff's property in such a manner as amounts to a taking of his property. On the contrary, our Courts have decided

that not even a County or the State has the right to take the property of one of its citizens in violation of the constitutional provisions prohibiting the taking of property without just compensation first being made.

In *Faust v. Richland County,* 117 S. C., 251, 109 S. E., 151, the Court held that:

"The overflowing of the plaintiff's lands in the manner alleged in the complaint was in violation of the constitutional provisions prohibiting the taking of property without due process of law, and likewise without just compensation being first made."·

If the throwing of surface water onto the lands of a person, thereby depriving him of the use thereof, amounts to a taking of his property, then certainly the frequent batting of baseballs onto the premises and dwelling house of the plaintiff, the trampling of his garden and his yards, and the other trespasses alleged and testified to by him, to such an extent as to render his premises uninhabitable, and depriving him of the full use and enjoyment of the same, and impairing the value thereof, is a taking of property in contemplation of the constitutional provisions.

If another eleemosynary institution had owned ground adjoining the university campus, and had built thereon a public baseball park, and leased it to the Greenville Baseball Association for the purpose of playing league ball thereon, knowing that the grounds were insufficient, and that balls would be batted by the players into the windows of the classrooms of Furman University, could it be said that Furman University would not have a cause of action against such eleemosynary corporation for maintaining a nuisance and for destroying and using its property without just compensation first being had? In the same way, and upon similar principles of justice and legal liability, the plaintiff should have a cause of action against the university, and the university should not be allowed to claim immunity on the ground that it is an eleemosynary corporation.

In our opinion, an eleemosynary institution cannot use its property in such a way as to prevent others from enjoying the use of theirs, and, if it uses the property in such a manner as to become a nuisance, it makes itself liable for damages.

" 'Nuisance' is * * * 'Anything that unlawfully worketh hurt, inconvenience or damage. * * * That class of wrongs that arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property, either real or personal. * * * A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public. * * * If a thing is calculated to interfere with the comfortable enjoyment of a man's house, it is a nuisance. * * * Every citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property. * * *' " *Deason v. Southern Railway*, 142 S. C., 334, 140 S. E., 575, 577; 3 Bouv. Law Dict. (1914), 2379.

The evidence in the cause tended to show an unreasonable use by Furman University of its property to the hurt and annoyance of the property of the plaintiff; that it interfered with the comfort and enjoyment of the plaintiff's house, drove him from it, and prevented him from enjoying the use of his property.

"A matter may be a nuisance although it injuriously affects only one household." *Emory v. Hazard Powder Co.*, 22 S. C., 476, 53 Am. Rep., 730.

"A nuisance is anything which works hurt, inconvenience, or damage * * * which essentially interferes with the enjoyment of life or property." *State v. Columbia Water Works*, 82 S. C., 181, 63 S. E., 884, 889, 22 L. R. A. (N. S.), 435, 129 Am. St. Rep., 876, 17 Ann. Cas., 343.

In the case of *Frost v. Berkeley County*, 42 S. C., 409, 20 S. E., 280, 283, 26 L. R. A., 693, 46 Am. St. Rep., 736,

Chief Justice McIver, writing the opinion of the Court, said:

"We think, if one uses his own land for the prosecution of some business from which injury to his neighbor would either necessarily or probably ensue, he is liable if such injury does result, even though he may have used reasonable care in the prosecution of such business. This doctrine is supported, not only by reason, but by the weight of authority, as is shown by the cases cited by appellant's counsel. The rule is well stated in a note in 5 Am. & Eng. Enc. Law, at page 3, in these words: 'In general, if a voluntary act, lawful in itself, may naturally result in the injury of another, or the violation of his legal rights, the actor must, at his peril, see to it that such injury or such violation does not follow, or he must expect to respond in damages therefor; and this is true regardless of the motive or the degree of care with which the act is performed.'

"In the case of *Susquehanna Fertilizer Co. v. Malone*, 73 Md., 268, 20 A., 900 (9 L. R. A., 737, 25 Am. St. Rep., 595)—a case very much like the one under consideration—it was held that: 'No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie; and this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business'; citing *Attorney General v. Colney Hatch Lunatic Asylum*, 4 Ch. App., 147; *Pinckney v. Ewens*, 4 L. T. (N. S.), 741; *Stockport Water Works v. Potter*, 7 Hurl. & N., 160; *Rylands v. Fletcher*, L. R. 3 Eng. Ir. App., 330. * * * 'If a person brings or accumulates on his land anything which, if it should es-

cape, may cause damage to his neighbor, he does so at his peril. If it does escape and cause damage, he is responsible, however careful he may have been, and whatever precautions he may have taken to prevent the damage.' In *Bamford v. Turnley, supra,* the jury were instructed that if they thought the spot was convenient and proper, and that the use by the defendant of his property was, under the circumstances, a reasonable use of his own land, he would be entitled to a verdict; but upon appeal these instructions were held to be erroneous, and that it was no answer, in an action for a nuisance creating actual annoyance and discomfort in the enjoyment of neighboring property, that the injury resulted from a reasonable use of the property.

"In *Cahill v. Eastman,* 18 Minn., 324 (Gil., 292) [10 Am. Rep., 184], it was held that a person who uses his property in such a manner as necessarily tends to injure the property of another, is liable to that other for any injury which may result from such use, without regard to considerations of care and skill therein. In that case the Court quotes the following passage from Bl. Comm., bk. 3, c. 13: 'If one erects a smelting house for lead (or, for the same reason, a fertilizer factory, in which sulphuric acid is generated) so near the land of another that the vapor and smoke kills his corn and grass, and damages his cattle therein, this is held to be a nuisance. And, by consequence, it follows that if one does any other act in itself lawful, which yet, being done in that place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent upon him to find some other place to do that act, where it will be less offensive.' "

But the university contends that it did not lay out the baseball park or have any control over its operation, and for this reason it is not liable. Paragraph 6 of the lease of Furman University to the Municipal Athletic Corporation is as follows:

"*The lessee covenants not to make any alterations, additions or improvements to the demised premises, without written consent of the lessor,* and to permit the lessor or its agents, at all reasonable times, to enter the demised premises or any portion thereof, for the purpose of examining same or making such repairs, alterations or improvements as the lessor may see fit voluntarily to make."

Under this paragraph of the lease, the university had complete control of the situation. It could have caused the fences to have been built higher, and caused the baseball grounds, grandstands, and club houses to have been built in accordance with their wishes, and possibly in such a manner as not to injure the plaintiff. There is testimony on the part of the plaintiff that the university knew that the ball ground would be too small without the addition of Peden's property, and, while negotiating for the purchase of Peden's land, he was informed that the building of a baseball park would destroy the value of his land. The university contends that it is not responsible for injury to plaintiff's property by reason of the use made of the premises by the Greenville Baseball Association, and cites 2 Wood on Landlord and Tenant (2d Ed.), p. 1283, where the rule is stated as follows:

"In order to charge the landlord *the nuisance must necessarily result from the ordinary use of the premises by the tenant, or for the purpose for which they were let;* and where the ill results flow from the improper or negligent use of the premises by the tenant, or, in other words, where the use of the premises may or may not become a nuisance, according as the tenant exercised reasonable care, or used the premises negligently, the tenant alone is chargeable for the damages arising therefrom."

In 16 R. C. L., 1076:

"It is usually held that the landlord is liable to third persons standing in the position of strangers for injuries re-

ceived wherever he demises the premises, * * * where at the time of the demise, the premises were so constructed or in such defective condition that a reasonable, ordinary and expected use of them by the tenant would create a nuisance working injury to third persons; where the premises are let to be used for a purpose which may reasonably be expected to create a nuisance."

In 16 R. C. L., 1081, it is held:

"It is not always necessary in order that the landlord may be held liable for injuries resulting from a nuisance on the leased premises that the cause of the injury be in and of itself a nuisance at the time of the lease. Leases are made with a view to the use of the premises leased, and if the injury to the person or property of a stranger is the result of the reasonable, ordinary and contemplated manner of use of the premises, the lessor will be responsible therefor, although unused, and as they stood at the time of the demise, the premises were not, of themselves, a nuisance."

The lease provides that the lessee may rent said athletic field to the Greenville Baseball Association or any baseball team representing the City of Greenville in league baseball, for and during the playing season of each year, etc. There is testimony tending to show that, when the lease was made, the university knew the ball park would be too small, and that balls would be knocked onto plaintiff's premises, and that the nuisance would necessarily result "from the ordinary use of the premises by the tenant for the purpose for which they were let."

After the Court had directed a verdict in favor of Furman University, plaintiff asked leave to amend his complaint to conform to the facts proven and to ask damages against Greenville Baseball Association. This motion was overruled, and a verdict directed in favor of Greenville Baseball Association.

The presiding Judge should have allowed the plaintiff to amend his complaint in accordance with his motion.

There was testimony in the case tending to prove the allegations of the complaint, and the issues should have been submitted to the jury. It was error of law for the circuit Judge to have directed a verdict for the defendants.

The judgment of the circuit Court is reversed, and the case remanded for a new trial, with leave to the plaintiff to move before that Court for an order to amend his complaint, if he be so advised.

MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN did not participate.

MR. JUSTICE CARTER (dissenting and concurring) : This action by the plaintiff, J. R. Peden, against the defendants, Furman University and Greenville Baseball Association, commenced in the Court of Common Pleas for Greenville County, October 11, 1926, is an action to recover the sum of $5,000 against the defendant, Furman University, for alleged damages to plaintiff's premises in the city of Greenville, S. C., and for an order against Furman University and the Greenville Baseball Association perpetually restraining and enjoining them from using certain lands, known as "Graham Field," in the city of Greenville, "for baseball, football, track meets or any other athletic or sport purposes." Issues being joined, the case came on for trial before his Honor, Judge M. L. Bonham, and a jury at the September, 1927, term of Court for Greenville County. At the conclusion of the testimony for the plaintiff, the defendants made a motion for a nonsuit, which motion his Honor, Judge Bonham, refused. Whereupon the defendants offered testimony, and at the close of all the testimony the defendants moved for a directed verdict. This motion the trial Judge granted. Thereupon the plaintiff asked the Court for an injunction, as asked in the prayer of the complaint, but the application was refused. The plaintiff, not having in his complaint asked for any damages against the defendant Greenville Baseball Association, but having asked only for

an injunction against that defendant, counsel for the plaintiff at this juncture of the proceeding asked leave to amend his complaint to conform to the facts proven, and requested the trial Judge to instruct the jury to pass on the question of damages done by that defendant, Greenville Baseball Association, to the premises of the plaintiff in question. This motion was refused. Thereafter the plaintiff made a motion for a new trial. This motion was also overruled. From the ruling of the trial Judge directing a verdict for the defendants, from his refusal to grant the several motions made by plaintiff's counsel, and from the entry of judgment on the verdict, the plaintiff has appealed to this Court, and asks a reversal upon the grounds set forth in his exceptions, seven in number.

The first, second, and third exceptions impute error to the presiding Judge as to his ruling in regard to the defendant, Greenville Baseball Association; exceptions 4, 6 and 7 concern the defendant, Furman University, and exception 5 pertains to both of the defendants. We will first consider the exceptions that concern the defendant Furman University, beginning with the fourth exception, which is as follows:

"In directing a verdict in favor of Furman University.

"(a) There was no testimony that defendant is a charitable institution;

"(b) Assuming that there was such testimony it should have been left to the jury to say whether it was sufficient;

"(c) In no event does the *Vermillion case* apply, because this is not an action based upon negligence, but upon trespass and for maintaining a nuisance, either of which has resulted in the violation of a constitutional right, *viz.*: the taking of private property for private use. This was done by defendant Furman University leasing land to be used for a public baseball park, knowing that it was too small, and that balls would be knocked onto plaintiff's premises, and other damages would result from such use."

As to the error alleged under subdivision (a) of this exception, wherein the appellant contends that there was no testimony that the defendant Furman University is a charitable institution, in our opinion the contention is untenable. It is admitted by appellant, in fact it is alleged in plaintiff's complaint, that the defendant Furman University is an eleemosynary corporation, conducting a university for young men. The word "eleemosynary," according to Webster's New International Dictionary, means "relating or devoted to charity"; "alms or alms giving"; "given in charity or alms"; "having the nature of alms"; "supported by charity." Corpus Juris, Vol. 20, p. 399, gives practically the same definition as Webster. Mr. Justice Henshaw, speaking for the Court in the case of *People v. Cogswell,* 113 Cal., 129, 45 P., 270, 271, 35 L. R. A., 270, in discussing the meaning of the term, said: " 'Eleemosynary' has come in the law to be interchangeable with the word 'charitable.' " We think there can be no question that the words are so used. The charter shows the purpose of Furman University, and all of the testimony shows clearly that it is supported entirely by endowment, gifts, and fees by students, and that no part is appropriated for private purposes, and the institution is not conducted for gain, but all money received is used for the purpose for which the institution was organized, helping young men to acquire an education. In our opinion, the only inference of which the evidence is susceptible is that Furman University is a charitable institution.

Under subdivision (b) of this exception, the appellant contends that, "assuming that there was such testimony (as to whether this defendant was a charitable institution) it should have been left to the jury to say whether it was sufficient." As shown in our discussion of subdivision (a) of this exception, the exception is susceptible of but one inference, that Furman University is a charitable institution. Therefore this question was properly not submitted to the jury.

Under subdivision (c) of this exception, appellant takes the position that the case of *Vermillion v. Woman's College of Due West,* 104 S. C., 197, 88 S. E., 649, referred to by his Honor, Judge Bonham, as being in support of the motion for direction of a verdict as to the defendant Furman University is not in point, for the reason that the action in the *Vermillion case* is based on negligence, whereas the action in the case at bar is based on acts of trespass and for maintaining a nuisance. The *Vermillion case* was twice before this Court. The first time the appeal was from an order of nonsuit. This Court reversed the order of nonsuit, and remanded the case for the purpose of determining the relation of the defendant to the public, determining whether or not it was a charitable institution, for the reason that the defendant had offered no evidence to prove its relation to the public, and in order to allow the plaintiff to show that the "defendant is not, in fact, within the reason of the rule established in *Lindler v. Hospital,* 98 S. C., 25, 81 S. E., 512." The second appeal was from an order of the presiding Judge directing a verdict for the defendant, and from the entry of judgment thereon. The last-mentioned appeal was not sustained, but the judgment of the lower Court was affirmed; this Court holding that under the evidence the defendant was within the reason of the rule established in the *Lindler case.* The opinion of the Court in the first appeal was written by Mr. Justice Hydrick, and in the second appeal the opinion of the Court was written by Mr. Justice Fraser, reported in 111 S. C., 160, 97 S. E., 245. It is true that the action in the *Vermillion case* was based on negligence, and the action in the case at bar is based on alleged acts of trespass and for maintaining a nuisance, but a reading of the opinion of the Court in the *Vermillion case* will show that the holding of the Court and doctrine announced by the Court in that case was not intended to be confined to suits arising out of acts of negligence, but should be applied also to actions such as the suit at bar. In pass-

ing upon the question involved on the appeal in the *Vermillion case,* Mr. Justice Hydrick, speaking for the Court, discussed the *Lindler case,* and because of the full and clear statement of the law on the subject involved, contained in the opinion of the Court in that case, we quote at length therefrom as follows:

"These differences in the facts of the two cases make no difference in the applicable law, because the exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. *It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity.* The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists. That being so, what difference can it make whether the tort is that of the corporation itself or its superior officers and agents, or that of its servants? Liability for the one would as effectually embarrass or sweep away the charity as the other. It would therefore be illogical to admit liability for the one and deny it for the other.

"This rule does not put such charities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of *respondeat superior,* which is itself based on reasons of public policy. The injured person has his remedy against the actual wrong-

.doer. It is said, however, that he may be and often is financially irresponsible. But the answer is that the law does not undertake to provide a solvent defendant for every wrong done. There are many cases of wrongful injury not compensated, because the wrongdoer is insolvent. The head of a family is liable for the torts of his servants; but you cannot take his homestead and break up his family to satisfy a judgment against him, either for his own or for his servant's torts. Public policy says it is better for the individual to suffer the injury uncompensated than for the state to suffer the evil consequences of having the homes and families of its citizens destroyed. The state is likewise most deeply interested in the preservation of public charities. Questions of public policy must be determined upon consideration of what on the whole will best promote the general welfare.

"It would serve no good purpose, except to show painstaking diligence in the consideration of the question at issue, to review the decisions of other Courts. This has been done in several of the cases cited in the arguments of counsel. The conclusions reached are variant and irreconcilable. Some Courts hold the rule of *respondeat superior* applicable to the fullest extent; others deny its applicability *in toto;* while others take intermediate ground for various reasons. The rule of total exemption is, perhaps, without exception, based upon grounds of public policy. That is the principle upon which liability was denied by the Court *en banc* in the *Lindler case,* and, as has been shown, its logical application requires exemption of public charities for the torts of their superior officers and agents as well as for those of their servants or employees, whether these be selected with or without due care."

In this opinion the Court lays emphasis on the fact that public charities are established for the benefit of the public, and that public policy forbids the destruction or crippling of public charities for the benefit of one or more members of the public; that "it is better for the individual to suffer

injury without compensation than for the public to be deprived of the benefit of the charity." His Honor, Judge Bonham, applied this doctrine in the case at bar in answer to the plaintiff's demand against Furman University for $5,000 for alleged tortious acts. Such ruling as Judge Bonham held is clearly supported by the principle announced by this Court in the *Vermillion case*.

The appellant further contends that the doctrine announced in the *Vermillion case* is not applicable to the case at bar, for the reason that Furman University received a rental for the land in question, known as Graham's field, and cites in support of this contention the case of *Gamble v. Vanderbilt University,* 138 Tenn., 616, 200 S. W., 510, 513, L. R. A., 1918-C, 875. The action in the *Gamble case* was commenced in the circuit Court of Davidson County, in the State of Tennessee, for the purpose of recovering damages against Vanderbilt University and its executive committee for alleged injuries inflicted upon the plaintiff's intestate by the falling of an elevator in an office building owned and operated by the university. The case went before the Supreme Court of Tennessee on a question of demurrer. The allegations contained in the complaint in that case necessary for an understanding of the Courts' ruling briefly stated are as follows: That Vanderbilt University has its situs at Nashville, Tenn., and is engaged, and has been for many years, among other things, in renting and operating a large building for office purposes, owned by that defendant, situated in said city of Nashville, remote from and *wholly separate and distinct from* its university buildings and grounds, the said office building being located in the heart of the business center of said city and the university campus and buildings being in the suburbs of said city; that the said office "building consists of five stories, besides a basement, and contains numerous offices which are and have been for many years rented out annually to business and

professional persons, firms, and corporations, wholly disconnected with said Vanderbilt University or its educational work, in like manner in all respects as other office quarters are owned and rented out to tenants by other property owners of the city, and from whom are collected monthly rentals by the defendant in like manner in all respects as such rentals are collected by other landlords from their tenants in the city; that defendant owns, maintains, and operates in this office building, and has done so for many years, an elevator for the use of its tenants therein, in like manner in all respects as elevators are owned, maintained, and operated by other owners in other office buildings in the city; that, while a very small part of said building is used for the law department of the university work and for a law library, the balance of said building, which is the greater part of the same, is and has been for many years rented out, as stated above, to tenants as business offices, and the principal use to which the said building is and has been devoted is that of rented offices, and from which the said defendant derives a large annual income, to wit,· the sum of between $5,000 and $10,000 and the rentals charged and collected are the full, usual and customary rates charged for similar offices in said city." The plaintiff's intestate was a tenant of the defendant in said building; occupied an office on the fourth floor. Other allegations set forth facts showing that the elevator was for the use of defendant's tenants in said building, in going to and from their respective offices, and that the plaintiff's intestate was injured on said elevator, which resulted in his death, caused by the negligence of the defendant, setting forth several specifications of negligence. The complaint also contained allegations as to the members of the executive committee, who were made parties defendants, alleged to have been in charge of said building.

But the only matter decided by the Court in the *Gamble case* pertinent to the appeal in the case at bar is that the al-

legations to which we have referred relative to the use made of the said building took the case out of the regular rule, and prevented the complaint from being demurrable, and that Vanderbilt University might be held liable for damages established, to be paid out of the funds derived from the rental of said building, and only out of that fund. In holding that the complaint was not demurrable, the Supreme Court of Tennessee, by Chief Justice Neil, as the organ of the Court, based the ruling upon the ground that the chief use of the building in question was found in its service as an office building let for hire to the general public; that those renting the rooms in said building paid for the same the regular rates charged by other business houses, the rent being paid and collected, it appears, as other business houses in said city were handled. In this connection the Court made this statement: "Furthermore, we do not mean to hold that any judgment that may be recovered can be levied upon or collected out of the university grounds or buildings, or any property therein or thereon located capable of use for the conduct of charity." While the Court held that the demurrer should be overruled for the reasons we have shown, the Court did not overrule the principle announced by that Court in the case of *Abston v. Waldon Academy,* 118 Tenn., 24, 102 S. W., 351, 11 L. R. A. (N. S.), 1179, wherein the Court recognized the same doctrine declared by our Court in the *Vermillion case.* The Supreme Court of Tennessee in the *Gamble case* made reference to the fact that the doctrine declared in the *Abston case,* the same as that declared by our Court in the *Vermillion case,* was still of force.

The facts in the case at bar are very different from the facts involved in the *Gamble case*. In the case at bar, Graham field, the land in question, was purchased by Furman University for the purpose of using it as an athletic field for its students. When it was purchased for said purpose, the land was unimproved, and not in condition to be used

for athletic purposes, and, the university not having the funds necessary for improving the land so that it could be used for the purpose for which it was purchased, agreed to accept an offer made by the Municipal Athletic Corporation, and entered into an agreement with said corporation to the effect that the defendant, Furman University, demised the said premises to said association for a certain period of time, beginning March 1, 1925, and ending September 15, 1934, in and by which agreement the association obligated to expend as much as the sum of $22,500 in improving the said field, and agreed also to erect a grandstand, clubhouse, and fences, and to keep up the same. It was agreed on the part of the university that the association might rent the said athletic field to the Greenville Baseball Club or any baseball team representing the City of Greenville in league baseball for and during the playing season of each year, to wit, "from March 1st to September 15th inclusive the *right of said baseball club being subject to those of the lessee herein.*" It was also stipulated in said agreement that the "lessor might use the said athletic field at any and all time exclusive of spring practice and playing season of said Greenville Baseball Club, the lessor agreeing that it will in no manner interfere with the lessee during said spring practice and playing season." At the end of the term of the agreement, the premises were to be returned to the defendant, together with the improvements thereon. The Municipal Athletic Corporation, pursuant to this agreement, went into possession of the athletic field, and spent a considerable sum of money on the same for the purposes stipulated in the said agreement, and improved the same to a great extent. Later, it appears, the Municipal Athletic Corporation executed a lease for said premises to the Greenville Baseball Association, and the Greenville Baseball Association was in possession of said athletic field, under said last named lease, during the time or times of the alleged wrong done to the plaintiff.

It is clear that Furman University purchased the land in question, Graham field, to be used in connection with its educational plant as an athletic field, which is now regarded as a desirable part, if not a necessary part, of every educational institution, especially for young men; that, not having the money with which to fix the field so that it could be used for the purpose for which it was acquired, leased it to the Municipal Athletic Corporation for the period of time above stated, so that the field could be put in proper condition for athletic use, and thus better serve the educational institution as such. Even if the improvements made upon the said athletic field by the Municipal Athletic Corporation can be considered as payment of so much rental for the use made of said premises, still the case could not be said to fall under the same head as the *Gamble case*. The building involved in the *Gamble case* was used almost exclusively for the purpose of renting the many rooms contained in the building for offices, getting a monthly rental for the same, that is, the said building, consisting of five stories, with many rooms on each floor, was maintained and operated chiefly for business reasons, for private gain, whereas the property involved in the case at bar was purchased for the purpose of being used as an athletic field for the use of the students of the university, and considered necessary in the educational work of that institution. The improvements made by the Municipal Athletic Association have not and will not result in private gain, but enable the university to better fulfill its mission as an educational institution, as a charitable institution. Therefore, in our opinion, the *Gamble case* does not support the appellant's position.

In plaintiff's complaint (which will be reported) he makes certain allegations against some of the students of Furman University, but the gravamen of the plaintiff's grievance against that institution, as set forth in the complaint, seems to be that he is damaged as a result of that institution leas-

ing Graham field for the purpose of outsiders playing baseball games therein, alleging that the university knew that Graham field was not large enough for a baseball park, and further alleging that, because of the field not being large enough for a baseball park, balls are frequently batted by the players over the fence and onto the plaintiff's premises, causing trespassing on and damages to his property, and preventing the plaintiff from residing on his said premises, and further alleged that the acts complained of constituted a nuisance, and asked the Court for an order permanently restraining and enjoining the defendants from continuing said alleged nuisance.

In order to hold a lessor for an alleged nuisance committed by a lessee on land leased, it must appear that the use for which the land was leased constitutes a nuisance per se. Since the land in question in the case at bar was leased for a baseball park, the university cannot be held for the alleged nuisance, caused by the manner in which the game is conducted, for the reason that the game of baseball is not a nuisance per se. In 2 Wood on Landlord and Tenant (2d Ed.), 1283, the following appears as a statement of the rule:

"In order to charge the landlord the nuisance must necessarily result from the ordinary use of the premises by the tenant, or for the purpose for which they were let; and where the ill results flow from the improper or negligent use of the premises by the tenant, or, in other words, where the use of the premises may or may not become a nuisance, according as the tenant exercised reasonable care, or used the premises negligently, the tenant alone is chargeable for the damages arising therefrom."

In the case of McMechen v. Hitchman-Glendale Consol. Coal Co., 88 W. Va., 633, 107 S. E., 480, 481, the Court states the rule thus:

"An owner of property is not liable for a nuisance maintained thereon by a tenant or licensee, unless he erected the

nuisance and then leased the land, or leased or let it for the conduct of a business thereon, which, in its very nature, would work injury to a third person. If he leases or lets it for a purpose which may or may not work such injury, according to the way in which the enterprise is conducted or the purpose executed, he is not liable."

In the case of *City of Omaha v. Murphy*, 114 Neb., 573, 208 N. W., 667, 668, the following statement by the Court is made as to the rule as to the liability of the lessor as to a nuisance:

"It does not appear  *  *  *  that the defendant Hugh Murphy Company (lessor) owns, or participates in the operation of, the asphalt plant. It appears that this corporation is the owner of the real estate which is leased to its co-defendant, Hugh Murphy Construction Company, and that the latter company only is interested in the ownership and operation of the plant. Mere ownership of real property imposes no responsibility for a nuisance on it, unless the owner is instrumental in causing the nuisance. A tenant in possession is liable for a nuisance by him created on the premises of his landlord, but the landlord is not liable for such a nuisance created by his tenant, unless the landlord authorized or contributed to the causing or maintaining of the nuisance."

The Court in the opinion in the case of *Alexander v. Tebeau*, 71 S. W., 427, 428, 24 Ky. Law Rep., 1305, states the rule as follows:

"It cannot be said that the game of baseball is a nuisance *per se*. On the contrary, it has taken rank as the great American game—more generally patronized, perhaps, than any other. Of course, if permitted to degenerate into a mere rallying place for drunkards, rowdies, bullies, and men of like kidney, both the criminal and civil law would furnish adequate relief to abate such a nuisance, but we cannot in advance anticipate such to be the necessary consequence of its inauguration."

In the case of *Royse Independent School District v. Reinhardt* (Tex. Civ. App.), 159 S. W., 1010, the Court has the following to say with reference to a game of baseball:

"An ordinary game of baseball is not a nuisance *per se,* and the conducting of baseball games will not be enjoined because of the shouts and noises incident to the game, although an injunction may be granted where the game is conducted in an indecent and disorderly manner."

It is clear, therefore, that under the law Furman University as lessor cannot be held responsible for the alleged nuisance.

It is the further contention of the appellant that Furman University should be held liable for the alleged nuisance and be enjoined for the reason that Furman University participated in and committed some of the alleged wrongful acts which caused the alleged damage to plaintiff's property. A careful reading of the testimony in the case, as disclosed by the transcript, convinces us that this contention is not well founded.

It appears that there was some negotiation between the plaintiff and the president of the university regarding the proposed sale and purchase of the plaintiff's lot in question, but the parties were not able to agree upon a price. As to this, the plaintiff had the right to fix the price he desired for his lot, and the plaintiff should not be criticized because he fixed the price of the lot at a sum above what others thought the property was worth, or because he refused to sell at any price. On the other hand, the president of the university should not be criticized for refusing to pay what he considered a fabulous price for the property. Both were acting within their legal rights. As to the contention of the appellant that Graham field is too small for a baseball park, and that this was known to those acting for the university at the time the lease was made to the Municipal Athletic Corporation, in our opinion, is without merit. The evidence

not only does not establish this contention, but, on the other hand, the proof is that the park, Graham field, is of the usual size for baseball parks.

The proof is also that the alleged acts of trespass committed on the plaintiff's said premises were committed by attendants at the baseball games, conducted by the defendant Greenville Baseball Association, and not by the university; and the proof fails to show that the university participated in the alleged acts of trespass. There is an allegation in plaintiff's complaint to the effect that on one occasion, while students of the university were engaged in a practice game of football in the park, the ball went across the fence and onto the plaintiff's premises, but plaintiff's son, in the course of his testimony, stated that this was not the case, that the ball did not go over the fence. In regard to the contention of appellant that the fence around the park is not high enough, and that the grandstand is in the wrong place, that is a matter for which the lessee and sublessee are responsible, and cannot be charged against the university, under the law and facts of this case. As to the noise at the baseball games, the sublessee, Greenville Baseball Association, is the party to answer for that charge, and the same is true as to the alleged blocking of the street.

The appellant also complains of the kind of costume worn by students of the university on the field and in going to and from said field in sight of his premises. According to the evidence in the case, the costume worn by the students at the time in question was the same as is generally used on all athletic fields. The city authorities in the City of Greenville permitted students to march through the streets of that city dressed in a like costume, and it seems that no one thought there was anything wrong about it. Do not think the plaintiff has any just ground to complain of along this line.

The appellant also contends that some of the students while in the dormitories on the university campus exposed

themselves in a nude condition while in their rooms, and that they could be seen in this condition from plaintiff's said premises. The plaintiff testified to this effect. If any of the students did such an indecent thing, they should have been arrested, tried, and severely punished. So far as the record discloses, no warrant was issued for this alleged misconduct, and no warrant was asked for by the plaintiff. It does not appear from the record that the plaintiff reported this alleged misconduct to those in charge at the university. If any student was guilty of such misconduct, it was not only not approved by the university authorities but not known to them. Such misconduct would not be tolerated by the university. Even if it be granted that such conduct did occur, it had no connection with the issue involved in the case. In this connection, we call attention to the fact that neither the students, trustees, nor officers of the university are parties to this suit. It is therefore manifest that as to the university none of the grounds upon which the appellant stands are well founded.

In appellant's sixth and seventh exceptions error is imputed to the trial Judge in refusing to issue an injunction against the university. These exceptions are disposed by what we have stated in our consideration of the fourth exception. Also the fifth exception, which imputes error to the trial Judge in refusing to grant a new trial, as to the university, is disposed of by the conclusion we have reached with regard to the fourth exception.

The respondent Furman University gave notice that it would ask this Court to affirm the judgment upon the following additional grounds, to wit:

"The defendant, Furman University, was entitled to a directed verdict in its favor upon the grounds:

"(1) That it appears from the testimony and no other reasonable inference can be drawn than that the university rented these premises or leased the lot to Greenville Athletic

Association and that that association has been in control of the baseball games and the operation of it for baseball purposes.

"(2) That there is no testimony tending to show that Furman University runs the games or is in any way connected with them, except as lessor, and is not responsible in a case of this kind in as much as baseball games do not constitute a nuisance *per se*."

In our opinion, the judgment as to Furman University should also be affirmed on these additional grounds.

The exceptions 1, 2, and 3, which relate to the defendant Greenville Baseball Association, are as follows:

"In directing a verdict in favor of Greenville Baseball Association.

"The Court should have pronounced judgment against the Greenville Baseball Association for trespass and maintaining a nuisance. As to them there was nothing to submit to the jury. Having refused to allow the complaint to be amended no verdict could properly be rendered by the jury."

"In refusing to grant an injunction against the defendant Greenville Baseball Association.

"The testimony sustained the allegations of the complaint. The Court should have rendered judgment. In actions of this character it is not necessary for the jury to render a verdict."

"In refusing to allow plaintiff to amend the complaint alleging damages against Greenville Baseball Association after the presiding Judge announced that he would grant the motion for a directed verdict.

"The allegations of the complaint and the testimony would have supported a verdict for damages. There was no testimony that plaintiff was at fault in any particular, or this defendant was justified in committing the many acts of trespass."

There was some testimony tending to establish the material allegations as to the defendant Greenville Baseball Association, and, under all of the circumstances, we think the plaintiff was entitled to have his complaint amended as to that defendant in the particulars set forth in his motion and stated in his exceptions and, the case submitted to the jury as to that defendant Greenville Baseball Association. We consider it unnecessary to discuss the other questions raised by the exceptions as to this defendant.

It should be the judgment of this Court that the appellant's exceptions as to the defendant, Furman University, be overruled, and the judgment as to that defendant affirmed; that as to the defendant, Greenville Baseball Association, the judgment should be reversed, and the case remanded for a new trial as to that defendant, with leave to the plaintiff to amend his complaint as to that defendant, Greenville Baseball Association, in the particulars set forth in his motion before Judge Bonham and stated in his exceptions.

Mr. Chief Justice Watts concurs.