# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

John Doe, Petitioner,

v.

Bishop of Charleston, a Corporation Sole, and The Bishop of the Diocese of Charleston, in his official capacity, Respondents.

Appellate Case No. 2023-001491

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Charleston County
Bentley Price, Circuit Court Judge

---

Opinion No. 28252
Heard December 10, 2024 – Filed January 15, 2025

---

## REVERSED AND REMANDED

---

Lawrence E. Richter, Jr., of The Richter Firm, LLC, and David K. Haller, of Haller Law Firm, both of Charleston; and James B. Richardson, Jr., of Columbia, all for Petitioner John Doe.

Richard S. Dukes, Jr., of Turner Padget Graham & Laney, PA, of Charleston, and R. Hawthorne Barrett, of Turner Padget Graham & Laney, PA, of Columbia, both for Respondents.

**JUSTICE HILL:** The question in this case requires us to embark upon some legal time travel in search of the answer. The question is whether the doctrine of charitable immunity, which we abolished prospectively in *Fitzer v. Greater Greenville S.C. Young Men's Christian Ass'n*, 277 S.C. 1, 4, 282 S.E.2d 230, 231–32 (1981), shields Respondents, the Bishop of Charleston, a Corporation Sole, and the Bishop of the Diocese of Charleston, in his official capacity (collectively, the Diocese), from being sued for intentional torts that allegedly occurred in 1970. We conclude South Carolina has never extended charitable immunity to cover intentional torts. We therefore reverse the decision of the court of appeals and remand this case to the trial court.

## I.

Petitioner alleges numerous causes of action against the Diocese, including the intentional torts of intentional infliction of emotional distress, breach of fiduciary duty, fraudulent concealment, and civil conspiracy. The allegations arise from Petitioner's claims that he was sexually assaulted by two of his teachers in 1970 while attending seventh grade at a school operated by the Diocese. Petitioner's claims are not against the teachers or based on respondeat superior. Rather, he alleges the Diocese has direct, independent tort liability for certain conduct that caused his harm. He also claims he suffers from a repressed memory condition that entitles him to toll the statute of limitations, though that issue is not now before us. The circuit court granted the Diocese summary judgment, reasoning Petitioner could not recover because all of his claims were barred by the charitable immunity doctrine. The court of appeals agreed, concluding the doctrine, as it existed in 1970, immunized charities from all tort liability, including intentional torts. *Doe v. Bishop of Charleston*, 440 S.C. 640, 648, 891 S.E.2d 522, 527 (Ct. App. 2023).

Joining other states, South Carolina adopted charitable immunity in *Lindler v. Columbia Hosp. of Richland Cnty.*, 98 S.C. 25, 81 S.E. 512 (1914). The doctrine was controversial even then, as illustrated by Justice Fraser's lengthy dissent. The doctrine arose in England in 1846. Before charitable immunity reached American shores, the House of Lords had killed it off in England. *Prosser and Keeton on the Law of Torts* § 133 (W. P. Keeton et al. 5th ed. 1984). That did not stop us and most states from adopting it, justifying it on various grounds of public policy. Over time, logic and experience discredited all these grounds. Note, *The Quality of Mercy: "Charitable Torts' and Their Continuing Immunity*, 100 Harv. L. Rev. 1382 (1987); *see also Picher v. Roman Cath. Bishop of Portland*, 974 A.2d 286 (Me. 2009). *See generally* Restatement (Second) of Torts § 895E (Am. L. Inst. 1979) (declining to

adopt charitable immunity and canvassing its history and policy rationales). By the time we decided *Fitzer*, the disfavored doctrine was beating a steady retreat from many jurisdictions.

With this history in mind, we move to the dispositive issue: the state of charitable immunity in South Carolina as of 1970, the date of Petitioner's alleged injury at the Diocese's hands.

The Diocese takes the view that, as of 1970, charitable immunity extended to all torts, including intentional ones. This view can prevail only if we agree with the Diocese that our decision in *Jeffcoat v. Caine*, 261 S.C. 75, 198 S.E.2d 258 (1973), changed the law of charitable immunity by cutting back the reach of the doctrine to negligent torts only. Because Petitioner's causes of action arose in 1970, before *Jeffcoat* was decided, the Diocese contends the doctrine as it existed in 1970 cloaks it with blanket immunity for all the torts Petitioner pleads. The court of appeals agreed with the Diocese.

We disagree. Justice Lewis, writing for the unanimous Court in *Jeffcoat*, was careful to explain the charitable immunity doctrine had never extended to intentional torts. 261 S.C. at 80, 198 S.E.2d at 260. He pointed out the Court had refused to apply immunity in a case where a charitable institution was sued for trespass and nuisance. *Id*. at 79, 198 S.E.2d at 259–60 (citing *Peden v. Furman Univ.*, 155 S.C. 1, 151 S.E. 907 (1930)). Justice Lewis explained the idea that charitable immunity covered all torts was a mirage formed by the mists of dicta from certain decisions following *Lindler*. The core of the holding in *Jeffcoat* is the following two sentences:

> [T]his Court, while adhering in the past to the rule that charitable institutions are exempt from liability for mere negligence, has in every instance refused to further extend the rule. Therefore, the application of the immunity doctrine in a case of intentional tort is not required by precedent, nor, we conclude, by reason or justice.

*Id.* at 80, 198 S.E.2d at 260.

*Jeffcoat* did not change the law. It confirmed what the law had always been: that charitable immunity never extended to intentional torts. Nothing in our decisions in the half century since *Jeffcoat* shakes that judgment. The doctrine of charitable immunity therefore does not bar Petitioner's intentional tort claims against the Diocese. We reverse the decision of the court of appeals. We decline to address any

alternate sustaining ground for summary judgment, and we remand Petitioner's claims to the trial court.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES, JJ., and Acting Justice Jessica Ann Salvini, concur.**